Derin B. Dickerson*
Matthew D. Lawson*
Andrew J. Liebler*
Shanique C. Campbell*
Taylor Lin*
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777
Email: derin.dickerson@alston.com
matt.lawson@alston.com
andrew.liebler@alston.com
shanique.campbell@alston.com
taylor.lin@alston.com

**Admitted Pro Hac Vice*

***Attorneys for Defendant Grand Canyon Education, Inc.***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| TANNER SMITH, QIMIN WANG, and SABRINA PALMER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GRAND CANYON EDUCATION, INC.,<br><br>Defendant. | Case No. 2:24-cv-01410-SPL<br><br>**DEFENDANT GRAND CANYON EDUCATION, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P 56**<br><br>**ORAL ARGUMENT REQUESTED** |

**TO THE COURT, CLERK, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Grand Canyon Education, Inc. ("GCE") will, and hereby does, move the Court for an order granting summary judgment in its favor on all claims asserted in Plaintiffs' First Amended Complaint (Dkt. 18), filed September 20, 2024, and dismissing this action with prejudice.

Summary judgment in GCE's favor is warranted because there is no genuine dispute of material fact as to any of Plaintiffs' claims. Among other things, (1) Plaintiffs cannot establish that the challenged representations underlying their state law claims (Counts III through VII), when viewed in the totality of the circumstances, are likely to mislead a reasonable consumer in the targeted population of prospective doctoral students; and (2) Plaintiffs have failed to adduce evidence sufficient to establish either a scheme to defraud or specific intent to defraud, as required to sustain their claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq* (Count II).

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Statement of Facts, all declarations and exhibits submitted herewith, all pleadings and papers on file in this action, and any oral or documentary evidence presented at the hearing on this Motion.

Pursuant to the Court's Case Management Order (Dkt 37), on September 22, 2026, GCE's counsel emailed Plaintiffs' counsel a two-page statement describing this Motion and the relief requested herein.

DATED: October 22, 2026

*/s/ Derin B. Dickerson*
Derin B. Dickerson*
Matthew D. Lawson*
Andrew J. Liebler*
Shanique C. Campbell*
Taylor Lin*
**ALSTON & BIRD LLP**

1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777
derin.dickerson@alston.com
matt.lawson@alston.com
andrew.liebler@alston.com
shanique.campbell@alston.com
taylor.lin@alston.com

**Admitted Pro Hac Vice*

***Attorneys for Defendant Grand Canyon Education, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

By: /s/ *Derin B. Dickerson*
Derin B. Dickerson

Derin B. Dickerson (*pro hac vice*)
Matthew D. Lawson (*pro hac vice*)
Andrew J. Liebler (*pro hac vice*)
Shanique C. Campbell (*pro hac vice*)
Taylor Lin (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777
Email: derin.dickerson@alston.com
matt.lawson@alston.com
andrew.liebler@alston.com
shanique.campbell@alston.com
taylor.lin@alston.com

***Attorneys for Defendant Grand Canyon Education, Inc.***

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| TANNER SMITH, QIMIN WANG, and SABRINA PALMER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GRAND CANYON EDUCATION, INC.,<br><br>Defendant. | Case No. 2:24-cv-01410-SPL<br>Assigned to: Hon. Steven P. Logan<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GRAND CANYON EDUCATION INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. STANDARD OF REVIEW ........ 2
III. ARGUMENT ........ 3
A. The Challenged Representations are Not Likely to Mislead a Reasonable Consumer in the Targeted Population Acting Reasonably. ........ 3
1. Plaintiffs' State Law Claims Look to the Totality of Circumstances. ........ 5
2. The Totality of the Circumstances Shows a Reasonable Consumer Acting Reasonably Is Not Likely to Be Misled. ........ 6
B. Plaintiffs Lack Evidence to Create a Genuine Dispute of Material Fact as to their RICO Claim. ........ 10
IV. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beardsall v. CVS Pharm., Inc.*,
953 F.3d 969 (7th Cir. 2020) .......... 5

*Cal. Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987) .......... 11

*Demerath Land Co. v. Sparr*,
48 F.3d 353 (8th Cir. 1995) .......... 11

*Dimitrov v. Stayatti Aerospace Ltd*,
2026 WL 864011 (D. Ariz. Mar. 30, 2026) .......... 3, 13

*Dimuro v. Clinique Labs, LLC*,
572 F. App'x 27 (2d Cir. 2014) .......... 9

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .......... 5, 6

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 11

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*,
364 F. Supp. 2d 820 (S.D. Ind. 2005) .......... 9

*FTC v. Grand Canyon Educ., Inc.*,
No. 2:23-cv-02711 (D. Ariz. Aug. 19, 2025), Dkt. 202 .......... 1

*Hairston v. S. Beach Bev. Co.*,
2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) .......... 5

*In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*,
882 F. Supp. 915 (C.D. Cal. 1994) .......... 9

*Kurimski v. Shell Oil Co.*,
2022 U.S. Dist. LEXIS 136040 (S.D. Fla. June 29, 2022) .......... 5

*Lorona v. Ariz. Summit Law Sch., LLC*,
188 F. Supp. 3d 927 (D. Ariz. 2016) .......... 8

*Martinelli v. Petland, Inc.*,
2009 U.S. Dist. LEXIS 69313 (D. Ariz. Aug. 7, 2009) .......... 11

*Merrick v. Hilton Worldwide, Inc.*,
867 F.3d 1139 (9th Cir. 2017) .......... 2, 3

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .......... 5

*Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos.*,
210 F.3d 1099 (9th Cir. 2000) .......... 3

*Nolan v. Lab'y Corp. of Am. Holdings*,
2024 U.S. App. LEXIS 8627 (4th Cir. Apr. 10, 2024) .................................................. 10

*Ogdon v. Grand Canyon Univ., Inc.*,
2024 U.S. Dist. LEXIS 57494 (D. Ariz. Mar. 29, 2024) ................................................ 11

*Sw. Sunsites, Inc. v. F.T.C.*,
785 F.2d 1431 (9th Cir. 1986) ........................................................................................ 6

*Wyldewood Cellars, Inc. v. Torro, LLC*,
2025 WL 2208135 (D. Utah Aug. 4, 2025)............................................................... 11, 12

*Young v. Grand Canyon University, Inc.*,
57 F.4th 861 (11th Cir. 2023)........................................................................................ 1, 2

*Zlotnick v. Premier Sales Grp., Inc.*,
480 F.3d 1281 (11th Cir. 2007) ...................................................................................... 6

**STATUTES**

Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45 .................................. 5

RICO, 18 U.S.C. § 1962 ............................................................................................... passim

W. Va. Code § 46A-6-101(1) ........................................................................................... 5

West Virginia Consumer Credit Protection Act ................................................................. 5

## I. INTRODUCTION

This piggy-back lawsuit seeks to punish Grand Canyon Education, Inc. ("GCE") for going above and beyond in providing program information to Plaintiffs Tanner Smith, Qimin Wang, and Sabrina Palmer ("Plaintiffs"). GCE shared information that other universities simply do not provide, including clear and detailed disclosures about course requirements, credit minimums, estimated costs, and minimum program length. Most importantly, because doctoral programs are student driven and GCE cannot determine ex ante how long any student will take or how many courses she will need to complete her dissertation, GCE also disclosed the average number of additional courses beyond the required minimum (called continuation courses) that prior doctoral graduates required, as well as the cost of those courses. Had GCE not volunteered this information, which no law required it to provide, it would not now face after-the-fact claims from Plaintiffs who contend they were defrauded by their own unreasonable reading of it. And far from evincing the grand "scheme to defraud" that undergirds Plaintiffs' claims, Dkt. 18, FAC ¶¶ 37-64, the abundance of information GCE provided in writing and in conversations with counselors demonstrates its commitment to transparency.

It is notable that Plaintiffs' theory simply attempts to draft off prior inquiries into Grand Canyon University's ("GCU") doctoral programs, which have been repeatedly debunked and rejected. The Department of Education's ("DOE") October 2023 letter indicating its intent to levy a $37.7 million fine against GCU—upon which Plaintiffs' First Amended Complaint ("FAC") heavily relies, *see, e.g.*, Dkt. 18, FAC ¶ 8; Dkt. 18-2—was later rescinded. The Federal Trade Commission's 2023 lawsuit against GCE concerning GCU doctoral programs, which was also based on the DOE's fine letter, was later dismissed with prejudice and with no findings of wrongdoing. *See* Order, Stip. of Dismissal with Prejudice, *FTC v. Grand Canyon Educ., Inc.*, No. 2:23-cv-02711 (D. Ariz. Aug. 19, 2025), Dkt. 202. Finally, the Eleventh Circuit considered a nearly identical theory regarding GCU's doctoral programs in *Young v. Grand Canyon University, Inc.*, 57 F.4th 861, 874 (11th Cir. 2023). While faced with different underlying substantive claims, the Eleventh Circuit analyzed the same documents Plaintiffs

rely upon and held "Grand Canyon represented that 60 credit hours is the fastest a doctoral student can possibly complete his or her degree." *Id.*

Summary judgment in GCE's favor is warranted for two independent reasons. ***First***, the challenged cost representations, viewed in the totality of the circumstances, are not likely to mislead a reasonable consumer in the targeted population acting reasonably. It is undisputed that GCE cannot know at enrollment how many continuation courses, if any, a student will need to complete a doctoral program. It is likewise undisputed that GCE provides prospective students an estimated program cost based on the *minimum* number of courses *required* to complete the program and discloses the average number of continuation courses prior graduates needed, as well as the cost per continuation course. GCE also assigns every prospective student—including each Plaintiff—a counselor trained to discuss continuation courses and program disclosures. Given that full context, a reasonable consumer in the targeted population acting reasonably is not likely to be misled—especially not Plaintiff Smith, who testified that he spoke with his counselor as many as ten times before enrolling.

***Second***, Plaintiffs ground their RICO claim on mail and/or wire fraud predicates that rely on omissions. However, it is well-established in the Ninth Circuit that absent some independent duty—which Plaintiffs have not identified and which is not otherwise present here—a failure to disclose cannot support mail and/or wire fraud predicates. More importantly, Plaintiffs have failed to adduce any evidence showing either a scheme to defraud or the specific intent to defraud. Indeed, the abundance of information given to Plaintiffs undercuts the very notion of such a scheme or specific fraudulent intent.

For any and all of these reasons, and as explained below, this Court should enter summary judgment in favor of GCE.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if—construing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor—there is no genuine dispute of material fact, such that judgment is appropriate as a matter of law." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017). "[I]f the moving party

would not bear the burden at trial, it can meet its burden on summary judgment by either of two methods. It may produce affirmative evidence . . . negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may . . . meet its initial burden of production 'by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Dimitrov v. Stayatti Aerospace Ltd*, 2026 WL 864011, at *3 (D. Ariz. Mar. 30, 2026) (quoting *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000)).

## III. ARGUMENT

GCE is entitled to summary judgment on each claim in Plaintiffs' FAC. Plaintiffs' state-law claims fail because, viewed in the totality of the circumstances, the challenged cost representations are not likely to mislead a reasonable prospective doctoral student acting reasonably (Section III.A). In addition, Plaintiffs' RICO claim fails because no independent duty to disclose exists to support their omission theory, and the record contains no evidence of a scheme to defraud or specific intent to defraud (Section III.B).

### A. The Challenged Representations are Not Likely to Mislead a Reasonable Consumer in the Targeted Population Acting Reasonably.

It is undisputed that GCE cannot know, at the time of enrollment, how many continuation courses any prospective doctoral student will ultimately need to complete a program. SOF ¶ 17; *see* Ex. 2, Mueller Dep. at 113:23-115:9 (GCE and students "don't know how many additional [continuation] courses they are going to have to take" and "[t]hat's why we present the information the way we do versus adding it on [] because that could be very misleading to the student."); Ex. 3, Berger Dep. at 172:16–25 ("[E]very dissertation journey is highly individualized . . . . I can't predict" how many continuation courses students might take). GCE therefore could not have included the exact cost of continuation courses that the Plaintiffs might need years later in program cost estimates provided before Plaintiffs started their programs, as Plaintiffs suggest it should have done. *See, e.g.*, Dkt. 18, FAC ¶¶ 99-100. Instead, in the written documents each Plaintiff received, GCE provided (i) an estimated program cost based on the minimum courses *required* to graduate, (ii) the average number of

continuation courses prior graduates took, and (iii) the cost per continuation course. SOF ¶¶ 6-7; *see, e.g.*, Dkt. 24-8, Smith EA; Dkt. 24-2, Smith NPC. GCE also expressly noted that the *required* courses were the *minimum* each Plaintiff could take and that, while Plaintiffs had the opportunity to finish at that minimum, GCE could not promise they would do so. SOF ¶¶ 6, 8, 16; *see, e.g.*, Dkt. 24-8, Smith EA; Dkt. 24-4, Smith DDA; Ex. 7, Smith Dep. 115:1-6 (testifying "[t]here weren't any guarantees" about time to complete his dissertation and program). Beyond the written documents, each Plaintiff had a counselor available to answer their questions. SOF ¶ 9*; see, e.g.*, Ex. 5, Mancuso Dep. 24:5-28:22 (detailing the materials and information counselors provide to students before enrollment); Dkt. 24-2, Smith NPC ("Below you'll find a copy of your *personalized college cost estimation* by Academic Year. *If you have any questions, please contact your University Counselor*, who is available to assist you with the application, registration and college funding process!"). Plaintiff Smith, for one, testified that he spoke with his counselor as many as ten times, including about continuation courses and their cost. SOF ¶ 11. Accordingly, the totality of the circumstances does not support Plaintiffs' theory.

Despite all the information disclosed, Plaintiffs claim GCE's cost representations, viewed in a vacuum, are likely to mislead a reasonable consumer. But the analysis is not so simple. The reasonable consumer standard considers the totality of circumstances facing that hypothetical consumer. That necessarily requires analysis of all the information available to Plaintiffs, not simply the documents they select to focus on for litigation purposes. As a general matter, reasonable consumers with advanced degrees who are considering enrolling in a doctoral program read documents they are presented with and sign; they do not ignore qualifying language or express disclosures—especially where those disclosures appear, for example, in red font or concern potential, but ex ante unknowable, additional cost that a consumer might face. *See* Ex. 18, Rebuttal Report of Alixandra Barasch ¶¶ 20-28 (explaining that doctoral programs are "high-involvement" goods, so "prospective [doctoral] students are likely to engage in highly deliberate and informed decision-making process" which involves information gathering from available materials). This is only more so given the specifics of

this case, where the targeted population for the challenged representations is limited to tertiary-level educated individuals pursuing doctoral degrees. Based on the totality of Plaintiffs' circumstances, a reasonable consumer acting reasonably is not likely to be misled.

1. Plaintiffs' State Law Claims Look to the Totality of Circumstances.

Courts considering Plaintiffs' state law claims routinely affirm "the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021); *see also Hairston v. S. Beach Bev. Co.*, 2012 U.S. Dist. LEXIS 74279, at *13 (C.D. Cal. May 18, 2012) (citation omitted) ("Plaintiff's claim is based on a single out-of-context phrase . . . . The Court concludes that Plaintiff's selective interpretation of individual words or phrases from a product's label cannot support a CLRA, FAL, or UCL claim. [Defendant's] label does not simply state that it is 'all natural' without elaboration or explanation."); *Kurimski v. Shell Oil Co.*, 2022 U.S. Dist. LEXIS 136040, at *15 (S.D. Fla. June 29, 2022) (finding the analysis of FDUTPA claims "should take into account all the information available to consumers and the context in which that information is provided and used"); W. Va. Code § 46A-6-101(1) (stating that the West Virginia Consumer Credit Protection Act is meant to align with Section 5(a)(1) of the Federal Trade Commission Act); *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 978 (7th Cir. 2020) ("Under the reasonable consumer standard, we look holistically at advertising to determine whether it is misleading.").

Moreover, Plaintiffs must "show that members of the public are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted). "This requires more than a mere possibility that [the challenged representations] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* (internal quotation marks omitted). Rather, Plaintiffs must show "a probability that a significant portion . . . of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation marks omitted); *see also Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (requiring "probable, not possible, deception"); *Sw. Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431, 1436 (9th Cir. 1986) (same).

2. The Totality of the Circumstances Shows a Reasonable Consumer Acting Reasonably Is Not Likely to Be Misled.

The undisputed record shows that GCE repeatedly and accurately disclosed information necessary for prospective doctoral students to understand their program costs. SOF ¶¶ 5-9. It is undisputed that each Plaintiff received an Enrollment Agreement, Net Price Calculator, and Doctoral Disclaimers Acknowledgement. SOF ¶ 5; *see also id.* at ¶¶ 6-8. The Enrollment Agreement each Plaintiff signed (1) listed 60 "Required Program Major Course Total Credits," (2) stated "A minimum of 60 credits are required for completion of this program of study," (3) provided an "estimated" program cost based on the minimum of 60 credits, and (4) disclosed that doctoral graduates, "on average . . . required 5.2 continuation courses to complete their doctoral degree." *Id.* ¶ 6.[1] The Net Price Calculator likewise (1) provided a "Total Estimated Cost" in a chart that indicated it was based on 60 credits, (2) stated, in red font and above the chart, that "Displayed are estimates only," and (3) in red font, provided again the 5.2 continuation-course average and the cost per continuation course. *Id.* ¶ 7. Furthermore, the Doctoral Disclaimers Acknowledgement each Plaintiff signed disclosed that: (1) "***GCU cannot determine the final time to completion as so much of that is unique to the plan and dissertation*** the learner has laid out, and the rate at which the work is done by the learner," (2) "The Program allows learners the opportunity to finish within the listed 60 credits. But this is ***an opportunity not a promise***, as many learners will need additional time and continuation courses to complete an approved dissertation," and (3) "on average, doctoral students who graduated required 5.2 continuation courses." *Id.* ¶ 8. Together, these written materials—and several others that Plaintiffs received and/or had access to, such as the Academic Catalog and University Policy Handbook—foreclose any inference that GCE misled them about doctoral program costs and/or continuation courses.

For Smith and Wang, the totality of circumstances includes discussions with counselors that provided additional information about continuation courses and program costs. The

[1] Wang's Enrollment Agreement even further disclosed that "[s]tudents may need to take continuation courses that provide students with additional time for completing all the content and process requirements of the dissertation until officially approved or until the maximum time allowed per program policy has been reached." SOF ¶ 6; Dkt. 24-9, Wang EA.

evidence shows that GCE trains its counselors on continuation courses—their number, structure, and timing—and on the very documents Plaintiffs challenge. *Id.* ¶ 9. Counselors work with students through the application and enrollment process, providing information on time-to-completion, cost disclosures, credits, and other program requirements. *Id.* ¶¶ 9-10; *see, e.g.,* Ex. 5, Mancuso Dep. at 56:4-10 (testifying that "counselors, on average, [have] eight years tenure" with "hundreds of students," so "it is very much impressed upon potential learners . . . that it is likely they will need a continuation course"); Dkt. 60-18, Armstrong Decl. ¶¶ 4-5, 7, 11-12; Ex. 11, Armstrong Dep. at 10:24-12:15, 27:7-28:24; Dkt. 60-17, Lundine Decl. ¶¶ 6, 9; Ex. 12, Lundine Dep. at 22:1-6. And the counseling relationship was not a single interaction: on average, roughly 100 days passed between a prospective student's first contact with a counselor and enrollment. SOF ¶ 10; *see* Ex. 6, Berger 30(b)(6) Dep. at 17:24-18:8; Dkt. 60-18, Armstrong Decl. ¶ 7 ("[M]y conversations with prospective doctoral students typically ranged from five minutes to over an hour. I counseled some prospective students who were ready to enroll after one conversation while others required several conversations before deciding to enroll."). Thus, the totality of the circumstances includes not only the volume of cost disclosures GCE provided but also the extended pre-enrollment period during which prospective students received those disclosures, discussed them with their counselors, and had the opportunity to ask clarifying questions. This was true for both Smith and Wang. For example, Smith spoke with his counselor as many as ten times over the phone in addition to exchanging emails. SOF ¶ 11; Ex. 7, Smith Dep. at 41:14-42:22; Ex. 16, May 2017 Emails. He "asked a lot" of questions during the calls, and his counselor told him about the cost and "possibility" of continuation courses. SOF ¶ 11; Ex. 7, Smith Dep. at 43:9-19, 45:12-17, 63:22-64:10. Wang, for her part, communicated with her counselors by email for nearly two years before she applied to a GCU doctoral program. SOF ¶ 12; Ex. 8, Wang Dep. 43:13-44:20, 142:1-143:13; *see, e.g.*, Ex. 13, Aug. 2017 Emails. In those email discussions, Wang's counselors gave her information about credit requirements, per-credit costs, tuition scholarships, and the Net Price Calculator, among other things. SOF ¶ 12; *see, e.g.*, Ex. 14, Mar. 2019 Email (regarding Net Price Calculator); Ex. 15, Feb. 2019 Emails

(regarding application and program requirements, including cost; Wang asked, "I have a question regarding the price per unit . . . Would I receive a discount?").[2] A reasonable prospective doctoral student—the targeted population of consumers—acting reasonably under the totality of these circumstances is not likely to be misled by GCE's disclosures.

Plaintiffs do not (and cannot) argue that the 5.2 continuation course average—which was presented in multiple materials—was itself false. That average is simply the mean number of continuation courses that prior graduates required. SOF ¶ 18; Ex. 3, Berger Dep. at 123:1-125:5. Indeed, Plaintiffs' own theory confirms that the average was accurate—they argue that GCE should have disclosed a percentage or distribution in *addition to* the average, not that the average itself was wrong. *See* Dkt. 48-1, Pls' Memorandum in Support of Motion for Class Certification ("Pls' Memo") at 7, 12. The mere fact that Plaintiffs Palmer and Wang ultimately required more than the 5.2-course average does not render that average misleading. SOF ¶ 15; *see* Dkt. 48-1, Pls' Memo at 9; *Lorona v. Ariz. Summit Law Sch., LLC*, 188 F. Supp. 3d 927, 939 (D. Ariz. 2016) ("The mere fact that [plaintiff] ended up with a below-median salary and above-median student loan debt does not contradict the Law School's prior, generalized statements about graduates"). Nor could the average have misled Plaintiff Smith, who knew about the possibility and cost of continuation courses prior to enrolling and ultimately took fewer than 5.2 continuation courses. SOF ¶¶ 11, 14; Ex. 7, Smith Dep. at 43:9-44:1; Dkt. 48-8, Smith Ledger (showing payments for Research Continuation I through IV). Smith's belief that he would outperform the average cannot render GCE's disclosures false or misleading. SOF ¶ 11; Ex. 7, Smith Dep. at 43:5-6 ("I didn't feel like I would have to take them."). Likewise, Wang's "hope[] that with [] hard work," she would "finish in 60 credits" was not a promise from GCE or GCU and did not change the continuation-course disclosures she

[2] Notably, Palmer recognized prior to enrollment that continuation courses were "a possibility." SOF ¶ 13; Ex. 9, Palmer Dep. at 53:13-16. Although she testified at deposition that she did not discuss continuation courses with her counselor, her interrogatory responses confirm that she spoke with a "GCU recruiter" about a "discount," discussed "GCU's doctoral program with her assigned admissions counselor," and "received emails from a GCU recruiter and counselor prior to enrolling at GCU." SOF ¶ 13; Ex. 17, Palmer's Response to Defendant's First Set of Interrogatories, Nos. 2 & 3 (Oct. 22, 2025).

received. SOF ¶ 16; Ex. 8, Wang Dep. 138:17-21. Indeed, an average is a reasonable, well-understood way of describing a dataset. *See, e.g., Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 364 F. Supp. 2d 820, 885 (S.D. Ind. 2005) ("The *mean*, or average, of a group is a generally accepted and widely used number for comparing differences between groups for both statistical analysis and graphical depiction."). Using an accurate average, rather than some other metric Plaintiffs now prefer, was not misleading. *Dimuro v. Clinique Labs, LLC*, 572 F. App'x 27, 32 (2d Cir. 2014) ("[T]here is nothing misleading about a dramatization that presents 'average results' as long as the dramatization accurately depicts the average results a consumer may achieve.").

Although Plaintiffs allege that GCE's representations about total estimated cost were false, *see*, *e.g.,* Dkt. 18, FAC ¶¶ 3, 41, 55, discovery produced no evidence substantiating that allegation. To the contrary, the cost estimations disclosed in Plaintiffs' materials were accurate: they reflected the tuition and fees for the minimum 60 required credits, which were "estimated" because tuition and fees "can change year over year." SOF ¶ 18; Ex. 3, Berger Dep. at 164:14-21. Moreover, Plaintiffs themselves testified that "estimate" means "a rough calculation," "a guess," "[a]pproximate," or "about"—not a final or guaranteed amount. SOF ¶ 16; Ex. 7, Smith Dep. at 60:13-22; Ex. 8, Wang Dep. at 63:1-15; Ex. 9, Palmer Dep. at 56:2-57:23. And courts have recognized that "[w]hen one refers to a number as an estimate, that person is telling the audience that the number does not represent a specific factual assertion, but rather an opinion or guess incapable of verification." *In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*, 882 F. Supp. 915, 927 (C.D. Cal. 1994) ("The estimated 1992 figure is equivalent to puffing because it is beyond the realm of reason to assert . . . that a reasonable consumer would interpret this as a factual claim upon which he or she could rely.") (internal quotation marks omitted). Courts also have rejected challenges to estimated cost figures as misleading where the plaintiff "was never promised that she would pay no more than the estimate." *Nolan v. Lab'y Corp. of Am. Holdings*, 2024 U.S. App. LEXIS 8627, at *20 (4th Cir. Apr. 10, 2024). Here, it is undisputed that GCE never promised Plaintiffs they would receive their doctoral degrees after completing and paying for the minimum of 60 required

credits. SOF ¶ 16; Ex. 7, Smith Dep. at 46:13-17, 115:1-6; Ex. 8, Wang Dep. at 138:5-139:1; Ex. 9, Palmer Dep. at 57:20-23, 143:24-144:2. To the contrary, GCE specifically informed each Plaintiff of the possibility that they may have to take continuation courses and that those courses would come at a cost. SOF ¶¶ 7-8. GCE was unable to determine at enrollment, for each Plaintiff, how many continuation courses, if any, they would ultimately need to take and pay for. Instead, GCE provided an estimated cost based on the required program courses all students must take, the average number of continuation courses prior graduates have required, and the cost of those continuation courses. Given the full context surrounding the estimated cost representations Plaintiffs challenge, a reasonable consumer acting reasonably is not likely to be misled.

### B. Plaintiffs Lack Evidence to Create a Genuine Dispute of Material Fact as to their RICO Claim.

Plaintiffs' RICO claim alleges GCE was associated with a RICO enterprise, which Plaintiffs call the "GCU Enterprise," and participated in that enterprise's affairs through a pattern of racketeering activity grounded on purported mail and wire fraud. Dkt. 18, FAC ¶¶ 206-210. Specifically, Plaintiffs based their RICO claim on allegations that GCE "used the mails and interstate wire communications to execute a scheme to defraud students to enroll in doctoral programs at GCU" and "knowingly and intentionally made misrepresentations concerning the cost of GCU's doctoral programs and/or failed to disclose material facts concerning their true cost." *Id.* ¶¶ 206, 211.

There are two problems with Plaintiffs' RICO claim that warrant summary judgment. ***First***, Plaintiffs' RICO claim is based on alleged omissions without evidence of any duty to disclose. *See, e.g.*, Dkt. 18, FAC ¶¶ 211, 215. Plaintiffs do not (and cannot) point to any evidence of affirmative misrepresentation. Instead, they base their claims on their contention that GCE omitted information about the distribution of continuation courses among former students. Ninth Circuit authority makes clear that "[a]bsent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent scheme." *Cal. Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818

F.2d 1466, 1472 (9th Cir. 1987); *Martinelli v. Petland, Inc.*, 2009 U.S. Dist. LEXIS 69313, at *6 (D. Ariz. Aug. 7, 2009) ("Plaintiffs do not assert that Petland has an independent duty to disclose to consumers the origin of Petland puppies."). Here, Plaintiffs have neither alleged nor proffered evidence substantiating that GCE had an independent duty to disclose any particular statistic. Indeed, in a separate case against GCE alleging misrepresentations about master's degree programs, the District of Arizona dismissed the plaintiffs' RICO claim to the extent it relied on omissions due to the plaintiffs' failure to identify an independent duty to disclose. *See Ogdon v. Grand Canyon Univ., Inc.*, 2024 U.S. Dist. LEXIS 57494, at *10 (D. Ariz. Mar. 29, 2024) ("As to whether a duty to disclose must be alleged concerning the alleged omissions, Defendants are correct that a RICO wire fraud claim based on an omission requires the existence of an independent duty to disclose").

***Second***, summary judgment is warranted because there is an absence of evidence as to crucial elements of Plaintiffs' RICO claim. Plaintiffs rely on purported mail and wire fraud as the predicate acts necessary to sustain their RICO claim. Dkt. 18, FAC ¶ 210. The elements for mail and wire fraud include (1) a scheme to defraud, (2) the use of the mails or wires to further that scheme, and (3) the specific intent to defraud. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). While "summary judgment must be granted with caution" in cases where intent is at issue, "disposition by summary judgment may still be appropriate if the party in opposition to the motion has adduced no evidence whatsoever of the requisite intent to defraud." *Demerath Land Co. v. Sparr*, 48 F.3d 353, 355 (8th Cir. 1995) (citations and internal quotation marks omitted). To support a mail or wire fraud predicate, Plaintiffs must show "more than false statements alone; Plaintiffs must offer evidence that [Defendant] intended to defraud someone." *Wyldewood Cellars, Inc. v. Torro, LLC*, 2025 WL 2208135, at *4 (D. Utah Aug. 4, 2025).

Plaintiffs deposed five senior GCE and GCU executives and still cannot point to any evidence establishing the elements of their RICO claim: Brian Mueller, CEO of GCE and President of GCU; Dr. Jennifer Lech, Vice Provost at GCU; Dr. Michael Berger, Dean of the GCU College of Doctoral Studies; Shawna Barnett, Vice President of Marketing at GCE; and

Nikki Mancuso, Executive Vice President at GCE. These executives' testimony instead confirms that the total cost estimates and 5.2 continuation-course average were meant to inform, not deceive prospective GCU doctoral students. SOF ¶ 18; *see, e.g.*, Ex. 3, Berger Dep. at 177:3-4 (purpose of the average is "to tell the students about who came before them and what they did."); Ex. 4, Barnett 30(b)(6) Dep. at 83:2-6 ("economic concerns" were "[n]ever" discussed as a reason not to disclose the continuation-course requirement); Ex. 2, Mueller Dep. at 17:10-18:1, 115:10-117:20 ("transparency" matters "[h]ugely" to GCE and the Net Price Calculator is "absolutely the fairest" presentation of cost); Ex. 1, Lech Dep. at 32:21-24 ("The department of ed required that we publish the length of time based on the required courses. So we put in additional information so that students knew and understood, above and beyond"); Ex. 5, Mancuso Dep. 105:21-24 ("We pride ourselves on transparency . . . and wanted to make [continuation-course] disclosures even more robust and transparent").

In fact, the testimony of these witnesses confirms that GCE is simply a service provider and does not control GCU. SOF ¶¶ 1-3; *see, e.g.*, Ex. 1, Lech Dep. at 14:2-3 ("GCU is the university and Grand Canyon Education is the service provider"); *id.* at 46:6-19 (confirming "GCU receives services through its Master Services Agreement with Grand Canyon Education for assistance in the creation and processing of marketing materials, no different than hiring an advertising agency"); Ex. 2, Mueller Dep. at 81:19-20 ("[C]ontrol means that they [GCE] were making the decisions, which they weren't. The decisions are made by Grand Canyon University."); Ex. 2, Mueller Dep. at 84:24-85:2 ("GCE does not have control over GCU. GCU does control the relationship it has with GCE from the standpoint of the plan, the tuition rates, and all of the things related to that."); Ex. 3, Berger Dep. at 86:1-24 (testifying that "the MSA covers [GCE], providing [GCU] a number of services" and if GCU's "training and guidelines and requests . . . aren't being met then I bring those to" GCE's attention); Ex. 3, Berger Dep. at 83:3-12 (identifying additional third-party services providers GCU utilizes); Ex. 4, Barnett 30(b)(6) Dep. at 32:12-14; 43:2-6 (stating "[e]verything we create for the promotion of the doctoral program must be sent to GCU for approval," including a "line-by-line review"); Ex. 5, Mancuso Dep. at 72:22-73:4; 91:13-92:2 (testifying that the Net Price Calculator is "GCU's

data and content" and that the Doctoral Disclaimers Acknowledgement is "GCU's document" prepared by GCU).

Because there is an absence of crucial evidence to support Plaintiffs' RICO claim, and because Plaintiffs have failed to identify any independent duty to disclose, this Court should enter summary judgment in GCE's favor. *See Dimitrov*, 2026 WL 864011, at *3.

## IV. CONCLUSION

Each of Plaintiffs' claims fails as a matter of law. For these reasons, GCE respectfully requests that the Court grant its Motion for Summary Judgment on all counts of the First Amended Complaint (Dkt. 18).

Respectfully submitted this 22nd day of October 2026.

*/s/ Derin B. Dickerson*
Derin B. Dickerson*
Matthew D. Lawson*
Andrew J. Liebler*
Shanique C. Campbell*
Taylor Lin*
*(*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

*Attorneys for Defendant Grand Canyon Education, Inc.*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of October 2026, I caused to be electronically transmitted the attached document entitled MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GRAND CANYON EDUCATION INC.'S MOTION FOR SUMMARY JUDGMENT to the Clerk of the Court using the CM/ECF System, which will send notification of such filing and transmittal of a Notice of Electronic Filing to all registered CM/ECF users.

*/s/ Derin B. Dickerson*
Derin B. Dickerson